No. 3155

Second Circuit

## DESOTO v. MAGNOLIA PIPE LINE COMPANY, INC.

(November 8, 1928. Opinion and Decree.)

George T. McSween, of Shreveport, attorney for plaintiff, appellant.

Pugh, Grimmet and Boatner, of Shreveport, attorneys for defendant, appellee.

## STATEMENT OF THE CASE

REYNOLDS, J. This is a suit under the Employers' Liability Act.

Plaintiff alleges that on February 28, 1927, while employed by defendant at a weekly wage of $31.50 a metal tank under which he was working fell on him—

"Mashing and brusing his body almost all over and particularly cutting a deep gash across the right eye, breaking petitioner's nose, dislocating his right arm and shoulder, mashing, bruising and fracturing the ribs on the right side, as well as spraining, bruising and tearing petitioner's back and causing injuries to petitioner's kidneys, heart and lungs and all his vital internal organs."

And that—

"As a further result of the said accident he has a deep, long and unsightly scar across his right eye-brow that will permanently disfigure him. That his nose is broken and permanently disfigured; that he constantly suffers pain in the said right side and leg to such an extent that he has been, is now and will for the balance of his life-time be unable to earn a living with his labor."

He further alleged that defendant had paid him compensation for three weeks

206

after the accident and had refused to pay him anything further, and he prayed for judgment against it for compensation at the rate of $20.00 per week during disability, the first payment to be decreed due as of March 7, 1928, with legal interest on each payment from the date of its maturity, and for further judgment against defendant for the sum of $250.00 as for necessary medical expenses.

In answer defendant admitted the accident and injury but denied that it was as serious or permanent as alleged by plaintiff and averred that he had fully recovered from his injuries; and it alleged that plaintiff was only slightly bruised about the right side and suffered some minor bruises about the face, and that all of his injuries have ceased to exist and that he no longer was suffering from any disability on account thereof.

It further alleged that plaintiff's disability by reason of the injuries received in the accident terminated on March 24, 1927, that it had paid him compensation of $20.00 per week for three weeks beginning with the date of the accident, as alleged by plaintiff, and that it had tendered him a further sum of $20.00 as compensation up to March 24, 1927, but that plaintiff had refused to accept it.

On the day of trial the defendant deposited in the registry of the court subject to the order of plaintiff the $20.00 tendered by it to and refused by him, and after the case was tried but before judgment was rendered therein the plaintiff withdrew the amount from the registry of the court and paid it to the court reporter who reported the testimony in the case to be credited on her bill for services in that connection.

On the issues presented by the petition and answer the case was tried and there was judgment in favor of the plaintiff and against the defendant for the sum of $20.00 and costs of suit and the plaintiff has appealed.

OPINION

The plaintiff utterly failed to prove any disability extending beyond the space of time for which the defendant paid and the judgment appealed from awarded him compensation, and wholly failed to prove any difference in his earning power subsequent to date on which defendant alleged he ceased to be disabled as compared with such power before the accident; and the only question in the case worthy of serious consideration is whether, as a result of the accident, the plaintiff "is seriously permanently disfigured about the face or head" within the meaning of clause 16 of paragraph (d) of subsection 1 of section 8 of Act No. 85 of 1926.

Plaintiff was injured on February 28, 1927, and this suit was filed on April 9, 1927. The trial took place on May 5, 1927.

He was asked how long he had remained in bed after the accident, and he said:

"I stayed around in bed better than a week. Of course I was up part of the time, you understand.
"Q. Went up town too, did you not?
"A. I was up town about a week after I got hurt.
* * *
"Q. Mr. DeSoto, the injury was to your right side, was it not?
"A. Yes, sir; well, both sides. It hurt both sides.
"Q. The collar bone was not broken, was it?
"A. I don't know whether it was broken or not.
* * *
"Q. Mr. DeSoto, would you not know if you had a broken rib or broken ribs? You would know it, would you not?

"A. Well, I don't know if I would or not. I have been hurting all over. Something is wrong with it somewhere now."

Plaintiff was asked if he had been injured in an accident while working for another employer previous to his entering the employment of defendant and he answered that he had, and that he had been examined by a physician and had radiographs of his body made.

"Q. Why did you have that examination made, Mr. DeSoto?
"A. My back kept hurting, that is why I had it made. My back kept hurting, and it hurt for a long time after I had that picture taken; it was a long time afterwards.
* * *
"Q. Did you not consult your lawyer about bringing a suit against them? (His former employer.)
"A. No, sir. Now you are getting on to the examination that I had Dr. Hewitt in Mansfield to make. He examined me and he said that my kidneys were bad, right after I got hurt * * * and he treated me, and my back got all right. But listen! After I went back to work for the Magnolia (his former employer) I could not stand up without using a belt under my clothes to protect my back.
"Q. That was caused by the first accident, you think?
"A. That is right."

Regarding the scar above his right eye, he testified:

"Q. That scar above your right eye, there; isn't that scar healed up?
"A. Well, I don't know.
"Q. Isn't that scar much better now than it was three months ago?
"A. Well, certainly.
"Q. You can hardly see it now, can you?
"A. No, you can hardly see it. If you look over my head you can't!"

Doctor L. S. Huckaby testified that he examined plaintiff immediately after the accident of February 28, 1927, and that he found that plaintiff

"Had a laceration over his right eye, and his leg just below the knee was bruised, and I believe his right or left side. I think it was his right side. I am not sure about that, but it was one of his sides. At that time I figured he had a broken rib, but I found out later that it was not broke. The x-ray showed that it was not broke.
* * *
"Q. Doctor, in your opinion, how long would it take this plaintiff to fully recover after that date?
"A. Well, I figured that he recovered within two weeks after the accident.
. * * *
"Q. Doctor, I will ask you if, in your opinion, you can state whether the plaintiff had recovered on the 24th of March, 1927?
"A. Yes, sir; he had.
"Q. Doctor, was his nose broken?
"A. No, sir; it was not. We thought it was, at that time, because when he came in, you see, he had this laceration over the eye, and of course naturally he was bloody over his face * * * At that time I put packing at each side of his nostrils but the next morning I removed that, and after this he told me himself—the next morning, that his nose was broken when he was a kid and had been crooked all the time, ever since then."

Doctor Huckaby further testified that he had known the plaintiff about twenty years, and—

"Q. Doctor, how long did plaintiff stay in bed after the accident?
"A. He stayed in bed one day.
"Q. Now, what have you to say about this plaintiff's condition? Would you say that his nose had been broken at the time of this accident?
"A. No, sir.
"Q. Was there any dislocation of the arm at the shoulder?
"A. No, sir; there was not.
"Q. Were the ribs fractured?
"A. * * * when I seen the x-ray I did not see any signs where there had been a fracture at all.

208

"Q. How about his kidneys; were they impaired?

"A. No, sir.

"Q. His lungs?

"A. No, sir.

"Q. Any other vital organ?

"A. No, sir.

"Q. Doctor, look at the plaintiff; would you say that he is disfigured, that is, his nose?

"A. No, sir; not any more than before.

*   *   *

"Q. If his back had been sprained, how long would it have taken that condition to be rectificed?

"A. Well, if he had had a sprained back he could not have gotten up on the second day of the accident.

"Q. Was he up on the second day after the accident?

"A. Yes, sir; he was up sitting before the stove when I went to see him that morning.

*   *   *

"Q. You can see the scar now, can you not, doctor?

"A. Well, it is not what you would term a scar; it is more a discoloration of the skin than a scar.

"Q. There is a discoloration of the skin extending up from the outside of the eyebrow, extending upward toward the middle of the forehead?

"A. Well, up toward the middle, yes.

"Q. About one inch and a half long?

"A. No, sir; at the time it wasn't but about one inch long. I taken two stitches and that was all."

The plaintiff was also examined by Doctor W. S. Harmon on March 6, 1927, and again on the day before the trial, and Doctor Harmon testified that the plaintiff was not suffering from any disability.

In regard to the scar, he was asked :

"Q. Doctor, would you regard that as an unsightly scar?

"A. Well, I do not think so. No. sir, I would not.

*   *   *

"Q. Doctor, looking at plaintiff from where you are sitting, would you say that his nose is crooked?

"A. No, sir; I would not.

"Q. Has his nose been broken, doctor?

"A. Not that I can tell."

Doctor S. C. Barrow testified that he had examined plaintiff three times on three different occasions and made x-ray photographs of his body each time. The first examination was on September 6, 1926, the second on March 6, 1927, and the last on May 4, 1927. That the first and second examinations disclosed nothing abnormal and that the third disclosed an old fracture of the collar bone that had properly healed. Asked if this collar bone could have been fractured on February 28, 1927, he said it could not.

So far from showing that at the time of the trial plaintiff was disabled to do work of any reasonable character by reason of the injuries received by him in the accident the evidence rather shows that he was not then laboring under any disability; and as to the nature and extent of the scar on his forehead, the evidence shows that this is slight and insignificant and such as not to be noticed on casual observation.

In our opinion the District Judge, who saw and heard the witnesses testify, did not manifestly err in his findings of fact, and as the defendant has not appealed nor answered the plaintiff's appeal but asks that the judgment appealed from be affirmed, it is accordingly ordered, adjudged and decreed that the judgment appealed from be affirmed.