135 N.J. Super. 137 (1975)
342 A.2d 875
NICHOLAS FALCONE, PLAINTIFF,
v.
JOAN P. BRANKER, VALERIE A. JOHNSON AND KEITH W. HALL, DEFENDANTS.
JEANETTE FALCONE, PLAINTIFF,
v.
JOAN P. BRANKER, VALERIE A. JOHNSON AND KEITH W. HALL, DEFENDANTS, AND VALERIE A. JOHNSON AND KEITH HALL, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
NICHOLAS A. FALCONE, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
June 19, 1975.
*141 Mr. Frederick A. Onore for plaintiff Nicholas Falcone, (Messrs. Onore & Onore, attorneys).
Ms. Marilyn R.Y. Harlem for defendants and third-party plaintiffs Valerie A. Johnson and Keith W. Hall (Mr. John W. Taylor, attorney).
Mr. George W. Kenny for defendant Joan P. Branker (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
Mr. Douglas Greenfield for plaintiff Jeanette Falcone (Messrs. Greenfield & Greenfield, attorneys).
Mr. Henry H. Rubenson for third-party defendant Nicholas A. Falcone.
WALSH, J.C.C. Temporarily Assigned.
This consolidated action arises out of a three-car automobile collision which took place on May 23, 1973. One of the drivers, plaintiff Nicholas Falcone, M.D., suffered injuries which, incidental to their healing, left a small facial scar and a scar below his left kneecap (both described in greater detail below). Medical treatment expenses totaled $91. As a result of his injuries Dr. Falcone instituted suit for pain and suffering, which suit was subsequently consolidated with another action previously filed by the doctor's wife.
*142 Based upon depositions and interrogatories defendants Joan P. Branker, Valerie A. Johnson and Keith W. Hall now move for summary judgment dismissing the doctor's complaint for failure to state a claim upon which relief can be granted. The movants assert the tort exemption of New Jersey's Automobile Reparation Reform Act, N.J.S.A. 39:6A-8 (popularly known as the "No Fault Law"), bars recovery on Dr. Falcone's pain and suffering claim due to his failure to meet the threshold limit of $200 in medical treatment bills required by the statute as a prerequisite to successful prosecution of this suit. Dr. Falcone opposes the motion on the grounds that the scars left from the injuries suffered constitute permanent significant disfigurements, thereby placing his claim outside the tort exemption of the above cited statute. The doctor further asserts that whether or not the scars are permanent significant disfigurements within the meaning of the statute is a fact question, thereby precluding the granting of defendants' motion. Defendants believe the court should deal with their motions in a summary manner pursuant to R. 4:67-5. Thus, both substantive and procedural questions are presented for resolution in this motion, which have not been previously answered in any reported decisions in our jurisdiction dealing with our No Fault Law. The court will first deal with the major substantive issue.

I
The statute upon which the parties rely in their contentions, N.J.S.A. 39:6A-8, states:
Every owner, registrant, operator or occupant of an automobile to which section 4, personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for damages to any person who is required to maintain the coverage mandated by this act, or to any person who has a right to receive benefits under section 4 of this act as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such *143 automobile in this State, if the bodily injury, is confined solely to the soft tissue of the body and the medical expenses incurred or to be incurred by such injured person or the equivalent value thereof for the reasonable and necessary treatment of such bodily injury, is less than $200.00, exclusive of hospital expenses, X-rays and other diagnostic medical expenses. There shall be no exemption from tort liability if the injured party has sustained death, permanent disability, permanent significant disfigurement, permanent loss of any bodily function or loss of a body member in whole or in part, regardless of the right of any person to receive benefits under section 4 of this act. Bodily injury confined solely to the soft tissue, for the purpose of this section means, injury in the form of sprains, strains, contusions, lacerations, bruises, hematomas, cuts, abrasions, scrapes, scratches, and tears confined to the muscles, tendons, ligaments, cartilages, nerves, fibers, veins, arteries and skin of the human body. [Emphasis supplied; footnotes omitted]
The attorneys stipulated that Dr. Falcone is a licensed and registered New Jersey operator-owner whose car is principally garaged in New Jersey, and to whom N.J.S.A. 39:6A-4 applies. See N.J.S.A. 39:6A-3 and Fennell v. Ferreira, 133 N.J. Super. 63, 69 (Law Div. 1975). Furthermore, the effective date of the act (January 1, 1973, L. 1972, c. 70, § 19) was over four months prior to the date of the accident, making N.J.S.A. 39:6A-8 fully applicable to plaintiff. The next question, therefore, is what constitutes a permanent significant disfigurement.
A number of other jurisdictions have enacted so called no fault auto insurance laws which contain tort exemptions with language similar to or the same as ours. In Minnesota and Florida the phrase "permanent disfigurement" is used, 7 M.S.A. § 65B.51 subd. 3(b)(1) and 18A F.S.A. § 627.737(2); while Illinois and Michigan use the phrase "permanent serious disfigurement," S.H.A. Ch. 73, § 1065.158(c) and 17A Mich. Stats. Anno. § 24.13135(1) [M.C.L.A. 500.3135 (1)]; New York's description is "significant disfigurement," Mc.K. Consol. Laws, C. 28, Insurance, §§ 671(4)(a) and § 673(1), and Connecticut uses the same phrase as New Jersey, C.G.S.A. § 38-323(a) (4). Unfortunately, only one case has been found construing any of these phrases, and this decision is merely an advisory *144 opinion of a state supreme court on the constitutionality of their no fault law. In re Requests of Governor and Senate, etc., 389 Mich. 441, 208 N.W.2d 469 (1973). The case is helpful, however, in that the court stated that the phrase "permanent serious disfigurement" not only provided sufficient standards for legal interpretation, but had done so for many years, citing a long list of workmen's compensation cases. 389 Mich. at 479-480, 208 N.W.2d at 481-482, n. 11. It is to this body of case law that this court turns for interpretive guidance.
Some prefatory remarks are necessary before examining the workmen's compensation cases. The underlying rationale for the award is to compensate the injured worker for the decrease in saleability of his skills and/or earning capacity resulting from the disfigurement. Thus, over and above an objective consideration of whether a particular scar is a permanent significant (or serious) disfigurement, most of the compensation cases make loss of earning capacity attributable to the scar a criterion in determining whether to make an award, and if so, how much. See generally 2 Larson, Workmen's Compensation Law, § 58.32; Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108 (E. & A. 1937) and Wright v. Purepac Corp., 82 N.J. Super. 100 (Cty. Ct. 1963) (the latter case offering a comprehensive listing of the New Jersey workmen's compensation disfigurement cases which contain no workable definitions (for present purposes) of disfigurement, since all are tied to the earnings capacity criterion). Also, some statutes limit the areas of the body for which compensation for disfigurement may be awarded, e.g., La. Stats. Anno.  R.S. 23:1221(4) (p) (face or head). Subject to the above caveats, the compensation cases do afford a viable basis, or at least starting point, for construing the relevant phrase in our No Fault Law.
The apparently now classic definition of the phrase "permanent serious disfigurement" in a compensation setting *145 was made in Superior Mining Co. v. Industrial Commission, 309 Ill. 339, 141 N.E. 165 (1923):
* * * The act does not provide compensation for every mark or scar, nor for every disfigurement. A disfigurement is that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner. Before compensation can be awarded under the Workmen's Compensation Act there must be a disfigurement, and that disfigurement must be both permanent and serious. It was certainly not intended under this provision to authorize compensation for every trifling mark that could be discovered by the closest inspection. * * * [141 N.E. at 166]
The continued vitality of this oft-quoted definition is witnessed by its adoption in jurisdictions initially dealing with the issue, St. Laurent v. Kaiser Aluminum & Chemical Corp., 316 A.2d 504, 506 (R.I. Sup. Ct. 1974), as well as by the fidelity with which it is followed in its own jurisdiction. See e.g., Corn Products Co. v. Industrial Comm'n., 51 Ill.2d 338, 282 N.E.2d 445 (Sup. Ct. 1972). And, for reasons to be stated below, this court considers use of the word "serious," as opposed to our statute's "significant" disfigurement, to be a distinction without a substantive difference.
Among other cases worthy of note is Ousley v. Employers Mutual Liability Ins. Co. of Wis., 121 So.2d 378 (La. App. 1960), where the court was dealing with a statute allowing a worker recovery when he was "seriously permanently disfigured about the face or head." The court held that:
* * * a scar on the face which significantly mars the natural facial expression and is such as to attract attention is a facial disfigurement compensable under the above-quoted provision. * * * [at 379; citation omitted]
With regard to the word "serious," the court in Dombrowski v. Fafnir Bearing Co. 148 Conn. 87, 167 A.2d 458 (Sup. Ct. Err. 1961), relying on Mitchum v. Inman Mills, 209 S.C. 307, 40 S.E.2d 38, 39 (1946), stated that "[d]isfigurement, *146 in order to be serious, must be `of such a character that it substantially detracts from the appearance of the person disfigured.'" 167 A.2d at 462 (emphasis supplied).
Evaluation of the term "permanent" in the context of the phrase under consideration is somewhat difficult. Clearly, a scar which is likely to close and become progressively thinner and less apparent with the passage of time, to the point where it loses any significance it may have had when new, would not constitute a permanent significant disfigurement. See e.g., General Motors Corp. v. Shannon, 155 A.2d 237 (Del. Super. Ct. 1959), aff'd 161 A.2d 433 (Del. Sup. Ct. 1960), and Chisholm v. Jahncke Dry Docks, Inc., 10 La. App. 323, 121 So. 684 (App. Ct. 1929). In the case presently before the court, however, this problem need not be resolved as the court does not find the permanence of the scars to be a determinative factor.
Lastly, the court looks to the legislative history of N.J.S.A. 39:6A-8, as well as the canons of statutory construction, for what additional light may be shed on the meaning of the phrase under consideration. The commission delegated to study the no fault auto insurance question recommended tort liability where there was a death or soft tissue injuries incurring medical treatment costs of $100 or more. New Jersey Automobile Insurance Commission Study Report (Dec. 1971), Recommendation 3, at XIII. The addition of the phrases "permanent disability, permanent significant disfigurement, permanent loss of any bodily function or loss of a body member in whole or in part," as found in N.J.S.A. 39:6A-8, was apparently made by the Insurance Committee of the General Assembly by committee amendment. Iavicoli, No Fault and Comparative Negligence in New Jersey, § 54, "Major Injury Limitation," 131 (1973), authored by the legal counsel to the aforementioned Study Commission. No other useful legislative history is extant.
Assistance in ascertaining the legislative intent is afforded by resort to the familiar maxim of noscitur a sociis. *147 Through use of this aid the meaning of a word or a particular set of words in a statute may be indicated, controlled or made clear by the words with which it is associated, in a manner somewhat similar in application to the more familiar doctrine of in pari materia. 2A Sutherland, Statutory Construction (4th ed. 1973), § 47.16 at 101; Ford Motor Co. v. N.J. Dept. of Labor and Industry, 5 N.J. 494, 502 (1950); Salz v. State House Comm'n., 18 N.J. 106, 111 (1955), and Germann v. Matriss, 55 N.J. 193, 220-221 (1970).
Turning to N.J.S.A. 39:6A-8, we find that the associated words all connote injuries of a substantial nature. Iavicoli, op. cit., lists as examples of the "major injuries" which would override the tort exemption the following: torn medial miniscus, subdural hematoma, collapsed lung, disfiguring facial scarring and ruptured bowel. The court therefore holds that the word "serious," as found in the compensation cases cited above, is at the least synonymous with "significant" as found in the statute considered here. Thus, the definitional language found in those cases stating that the disfigurement must be more than a trifling mark discoverable on close inspection, Superior Mining Co. v. Industrial Comm'n., supra, and that a disfigurement becomes serious when it substantially detracts from the appearance of the person disfigured, Dombrowski v. Fafnir Bearing Co. supra, accurately describes the type of disfigurement needed to override the tort exemption of N.J.S.A. 39:6A-8. Judged in this light, a facial scar has to mar the natural expression so as to attract attention and should be materially disfiguring to meet the statutory criteria. Ousley v. Employers Mutual Liability Ins. of Wis., supra.
The court believes that the interpretation given above is buttressed by the contrast presented between the phrase "permanent significant disfigurement" in the context of its associated words, and the enumeration of bodily injuries confined to soft tissue to which the tort exemption fully applies. Soft tissue injuries such as "lacerations, * * * cuts, abrasions, scrapes, scratches, and tears confined to the * * * nerves, fibers *148 * * * and skin of the human body" (N.J.S.A. 39:6A-8) do not * * * give rise to tort liability. Since it is common knowledge that lacerations, cuts, abrasions, etc., often result in formation of scar tissue, an absurd result would be achieved were this court to hold that all scarring from auto accident injuries rose to the level of a permanent significant disfigurement within the intendment of the statute. Our courts are enjoined not to reach such a conclusion in determining the legislative intent. Restaurant Enterprise, Inc. v. Sussex Mutual Ins. Co., 52 N.J. 73, 77 (1968).
Turning now to the scars which plaintiff asserts are permanent significant disfigurements, the court finds that plaintiff's facial scar is near, or on the tip of the nose, approximately 1/4 inch long; extremely thin; the same color as the surrounding skin, and barely noticeable at a three-foot distance, even when one knows where to look. The scar on the doctor's leg is elliptical in shape, somewhat like a quarter moon, about 1 1/2 inches long, a quarter inch wide at most, located 2 to 2 1/2 inches below the kneecap, and basically the color of the surrounding skin, although possibly a shade darker and shiny and smooth as in the nature of scar tissue with no hair growing on it. The court also notes that in the surrounding calf area of the 66-year-old plaintiff were varicosities more noticeable and unsightly than the scar, which was just visible from 12 feet if one knew where to look. Neither scar was ever sutured; the leg scar healing naturally after application of cold compresses.
Some of the "scar" cases decided under the various state workmen's compensation statutes offer an indication of the understanding of other courts as to what constitutes a permanent serious (or significant) disfigurement. In the following cases the courts held the scarring to be compensable: Poole v. Saxon Mills, 192 S.C. 339, 6 S.E.2d 761, 765 (Sup. Ct. 1940) (scar and depression 3 1/2 inches long, extending from above eye into scalp); Black, Sivalls & Bryson v. Homier, 194 Okl. 162, 148 P.2d 166, 167 (Sup. Ct. 1944) (scar of 1 to 1 1/2 inches above eye, requiring three to four *149 stitches and was noticeable and permanent); Bethlehem Steel Co. v. Wilson, 210 Md. 568, 124 A.2d 249 (Sup. Ct. 1956) (two-inch transverse incisional scar on outer part of leg below knee, somewhat depressed and pigmented in first case, and rectangular scar on thigh 3 1/2 inches by 2 1/2 inches and not pigmented in companion case); Corn Products Co. v. Industrial Comm'n, supra, (linear scar 3/4 inch long, about middle of forehead and 1/2 inch below hairline), and Templet v. Travelers Ins. Co., La. App., 278 So.2d 805, 808 (App. Ct. 1973) (scar on right cheek just under eye was evident, fairly large and such as to attract immediate attention, although not seriously discolored or unusually pronounced). The cases where compensation was denied are: Superior Mining Co. v. Industrial Comm'n, supra (two slight blue scars hidden by eyelid when open); De Soto v. Magnolia Pipe Line Co., 9 La. App. 205, 119 So. 889-891 (App. Ct. 1929) (inch-long scar running from outside of eyebrow and extending upward toward middle of forehead and evidently narrow as not such as "to be noticed on casual observation"); Chisholm v. Jahncke Dry Docks, Inc., supra, (scar 3 cm. long and 1/3 cm. wide, running diagonally on left side of face in region of chin which, according to medical testimony, would eventually bleach out and narrow, become less apparent, and eventually be difficult to observe); Mitchum v. Inman Mills, supra, (two scars, one 1 1/2 inches long from center of eyebrow to corner of eye, resembling wrinkle on forehead; the other, 1/4 inch long on temple  both no wider than the lead in a pencil and unobservable to court at eight feet); General Motors Corp. v. Shannon, supra, 155 A.2d at 237 (vertical scar in center of forehead 1 1/2 inches long and the width of a lead pencil mark), and Dombrowski v. Fafnir Bearing Co., supra (two fine-line scars, one at base of thumb, 1 1/2 cm. long, and the other 1 cm. long along middle finger  both silvery white in color and unobservable unless hand opened and palm exposed). See generally, Annotation, "Workmen's compensation: compensation for disfigurement", *150 116 A.L.R. 712 (1938), and the Later Case Service. The court's reading of these cases is to the effect that the scar must be such as to attract immediate attention and materially detract from the person's appearance.
The court does not believe that the fact that the scar on the plaintiff's knee is usually hidden by trousers should affect its judgment:
* * * the area of the body normally covered by clothing has shrunk drastically as the years have passed. Shorts are standard and frequent attire for both men and women. * * * [Bethlehem Steel Co. v. Wilson, 210 Md. 568, 124 A.2d 249, 252 (Sup. Ct. 1956) and Wright v. Purepac, supra, 82 N.J. Super. at 108.]
Nor should the availability of cosmetics or wigs be taken into account in an objective determination of whether a scar constitutes a permanent significant disfigurement. Cf. Arkin v. Industrial Comm'n of Colorado, 145 Colo. 463, 358 P.2d 879 (Sup. Ct. 1961) dealing with the availability of prosthetic devices.
Applying the case law cited above to the facts at hand, the court holds that although plaintiff has suffered scarring which appears to be permanent in nature (although that is not decided as a fact), the court does not believe that it is of the significant nature needed to override the tort exemption of our No Fault Law. N.J.S.A. 39:6A-8. This court believes the words of the court in General Motors Corp. v. Shannon, supra, 155 A.2d at 238, are most descriptive of this court's attitude towards plaintiff's scars:
I can think of no form of activity, social, economic, or otherwise, in which the claimant might indulge, and be subject to embarrassment by the presence of [these] small scar[s].

II
The next issues to be considered by the court contain both substantive and procedural problems. Plaintiff argues that his constitutional right to a jury trial is being denied by the *151 court's deciding whether or not the scarring described above constitutes a "permanent significant disfigurement" under N.J.S.A. 39:6A-8. The defendants contend that the proper resolution of this question should be by the court on a motion for summary judgment, R. 4:46, or after a hearing in a summary action brought pursuant to R. 4:67-5 with the complaining party exhibiting the alleged permanent significant disfigurement to the court in camera as has taken place in this case.
The N.J. Const. (1947), Art. 1, par. 9, states that the "right of trial by jury shall remain inviolate." This right has been interpreted as guaranteeing a litigant a jury trial only in those cases where a party was entitled to a jury trial under the 1776 and 1844 Constitutions of New Jersey. Steiner v. Stein, 2 N.J. 367, 379 (1949), and Montclair v. Stanoyevich, 6 N.J. 479, 484 (1951). Thus, a jury trial is not warranted where there are factual disputes historically dealt with by a court of equity, Steiner v. Stein, supra, and the right generally extends only to issues of fact in those classes of cases where a right to a jury trial was known at common law. Montclair v. Stanoyevich, supra. And it should be noted at this point that the right to a jury trial in civil cases guaranteed by the Seventh Amendment of the United States Constitution has not been held applicable to the states through the Due Process Clause of the Fourteenth Amendment. See the cases cited in Melancon v. McKeithen, 345 F. Supp. 1025 (E.D. La. 1972), aff'd 409 U.S. 943, 93 S.Ct. 289, 34 L.Ed.2d 214, and aff'd 409 U.S. 1098, 93 S.Ct. 908, 34 L.Ed.2d 679.
Interpretation of the law on a given, uncontroverted set of facts is for the court. The right to a jury trial never acted as a bar in New Jersey to motions in the form of summary judgment. Coykendall v. Robinson, 39 N.J.L. 98, 100-101 (E. & A. 1876); Jasion v. Preferred Acc. Ins. Co., 113 N.J.L. 108, 110-111 (E. & A. 1934), and National Surety Corp. v. Clement, 133 N.J.L. 22, 26 *152 (E. & A. 1945). Where subjective states of mind are potentially in issue, e.g., malice or fraud, our courts deal cautiously with summary judgment motions. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 76 (1954). But where the facts are not in dispute and divergent inferences cannot arise, a question of law is presented for the court regardless of the type of suit. Wemple v. B.F. Goodrich Co., 126 N.J.L. 465, 469 (E. & A. 1941) ("reasonable time"); Marti v. Standard Fire Insurance Co., 127 N.J.L. 591, 593 (E. & A. 1941), and Prostick v. Vroom, 128 N.J.L. 383, 386 (Sup. Ct.), aff'd 129 N.J.L. 465, 467 (E. & A. 1943) (probable cause to file complaint in malicious prosecution action).
From an objective, empirical standpoint, the appearance, coloration, existence and size of the plaintiff's scars are undisputed matters of fact. This being so, the case is ripe for summary judgment by the court as to whether or not, as a matter of law, plaintiff has sustained a "permanent significant disfigurement" as that term is used in N.J.S.A. 39:6A-8. The court therefore holds that plaintiff's constitutional right to a jury trial is not being abrogated by this court's decision on the motions for summary judgment. The court would hasten to add, however, that had there been any doubts entertained as to whether the scars described above might reasonably be considered to be permanent significant disfigurements under our No Fault Law, it would have left the issue to be decided by a jury. The defendants' claim of tort exemption is an affirmative defense carrying the concomitant burden of proof. Fennell v. Ferreira, supra, 133 N.J. Super. at 69-70.
The final issue before the court is whether plaintiff should appear before the court on a hearing in a summary action brought pursuant to R. 4:67-5, or merely be subpoenaed by defendants for the hearing on the motion for summary judgment. While defendants brought this motion initially as one for summary judgment, the procedure suggested in *153 Hammond v. Doan, 127 N.J. Super. 67 (Law Div. 1974) (see, too, the approval of this method in Smith v. U.S. Fidelity & Guar. Co., 305 So.2d 216 (Fla. D. Ct. App. 1974), for Florida's No Fault threshold questions), the motion was later changed, with the court's acquiescence, to one brought under R. 4:67-5 in order to bring plaintiff into court for the hearing. R. 4:67-5, however, applies only to summary actions brought pursuant to a statute or the Rules of Court (see e.g., R. 4:85-1), O'Brien v. Baldwin, 2 N.J. Super. 134 (App. Div. 1949), and the court therefore now feels this rule is an inappropriate vehicle for procedurally resolving the type of issue presented.
Evidently the procedural aspects of deciding threshold questions were not uppermost in the minds of the drafters of the various No Fault Laws. See e.g., the discussion of the problem in Schwartz, "No-Fault Insurance: Litigation of Threshold Questions Under the New York Statute  The Neglected Procedural Dimension," 41 Brooklyn Law Rev. 37 (1974). It was clearly the intent of the drafters, however, that not every automobile negligence case should reach a jury or no tort exemption would have been written into the statute. It is equally clear that it is the duty of this court to give efficacy to the legislative intent whenever possible. Dixon v. Gassert, 26 N.J. 1, 9 (1958). This being so, a pragmatic procedural solution consonant with the letter and/or spirit of the Rules of Court must be found.
While it may be highly unusual and not originally contemplated by the authors of the Rules that a litigant would appear before the court for an in camera hearing on a motion for summary judgment, plaintiff is the bearer of the facts upon which this motion must be decided. Our Rules of Court have sufficient flexibility to adapt procedure to meet unique situations in the pursuit of "simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." R. 1:1-2. The court therefore *154 holds that bringing plaintiff before the court at the time of a motion for summary judgment under R. 4:46 is the proper procedure in this case, and decides the motion on that basis.
For the reasons stated above, the court holds that defendants have met their burden of proving exemption from tort liability for Dr. Falcone's injuries, and his complaint is hereby dismissed.