J-A25001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTIANNA WALDINGER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADLEY M. WOKULICH | : | No. 478 WDA 2022 |

Appeal from the Order Entered April 8, 2022,
in the Court of Common Pleas of Erie County,
Civil Division at No(s):  10201-2019.

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED: FEBRUARY 15, 2023**

Christianna Waldinger appeals from the order of partial summary judgment in favor of Bradley M. Wokulich, which precluded Waldinger from recovering any non-economic damages in this motor vehicle accident case. The trial court concluded that Waldinger had limited tort coverage and she did not suffer a serious injury as a matter of law.  Upon review, we affirm in part and reverse in part.

On March 28, 2018, Waldinger and Wokulich were in an automobile accident in Erie, Pennsylvania.  Waldinger filed a complaint alleging that Wokulich caused the accident and that she suffered serious and permanent injuries as a result.  At the time of the accident, Waldinger was insured under an insurance policy where she elected the "Limited Tort Option" under the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL").  This

election precluded her from recovering non-economic damages except in limited circumstances.

After the close of discovery, Wokulich filed a motion for partial summary judgment asserting that there were no genuine issues of material fact and Waldinger did not suffer a serious injury, either a serious impairment of body function or serious permanent disfigurement, as a result of the accident. Wokulich claimed that Waldinger could not recover any non-economic damages under the MVFRL and judgment on these claims should be entered in his favor.

In deciding Wokulich's motion, the trial court set forth the undisputed facts as follows:

> On September 23, 2019, [Waldinger] was deposed in this matter. . . . [Waldinger] testified that immediately following the accident, she had pain in her right knee, chest, and "her right hand and wrist were extremely swollen and started to bruise."
>
> [Waldinger] was taken to the hospital by the paramedics, where she underwent a CAT scan and x-rays. [She] was "released after a few hours," discharged with pain medication, instructed to ice her wrist and knee, and anything else bruised, and return if she exhibited any "concussion-type illness," such as dizziness or bruising. She did not return to the hospital for any further treatment. As a result of her injuries, [Waldinger] missed a total of three (3) days of work.
>
> [Waldinger] testified that after the accident, she received the following medical treatment: an MRI at Tri-State Pain Institute ["Tri-State"]; treatment at Young Chiropractic from April through August of 2018, and; treatment with Orthopedic & Sports Medicine ["Sports Medicine"] from June through October of 2018. [Waldinger] underwent surgery on her right wrist in 2018 and has a permanent two (2) inch scar on her wrist from the procedure.

Additionally, [Waldinger] explained that she still has daily "chronic pain" in her right hand and wrist and cannot lift more than five (5) pounds. She testified that the pain generally begins in the morning when she squeezes the shampoo bottle and continues when she completes tasks such as pouring milk and using a round brush on her hair. Additionally, [Waldinger] testified that her hand "goes numb" when she is writing and/or typing at work all day, her pain is aggravated when she kneels, and she suffers from what she describes as [] "feeling like a pinched nerve" in her neck. [Waldinger] also testified that she never requested, or needed, accommodations to continue at her employment and that she did not experience any negative impacts on any hobbies or activities that she enjoyed prior to the accident.

[Waldinger] provided a report from Doctor D. Patrick Williams ["Dr. Williams"], who treated her at Sports Medicine. The report reflects that Dr. Williams treated [Waldinger] for her knee and wrist injury beginning on June 6, 2018. Dr. Williams reported treating [her] wrist with injections to relieve her pain. When the injections were unsuccessful, [Waldinger] underwent surgery to "release the first dorsal compartment of her right wrist." The surgery [on October 11, 2018] was successful and without complication. On October 22, 2018, [Waldinger] represented that her pain was "very well controlled" and that she was "having no difficulty with her wrist." Furthermore, Dr. Williams described "[Waldinger's] prognosis of her knee and wrist as "excellent." Finally, Dr. Williams opined, "[a]t this point, I do not think she will need any further treatment regarding her wrist or knee."

Trial Court Opinion, 6/6/22, at 1-3 (citations omitted).

On January 19, 2022, the trial court granted Wokulich's motion for partial summary judgment dismissing Waldinger's claims for non-economic damages. Waldinger filed a motion for reconsideration, which the trial court denied. Alternatively, Waldinger requested that the court dismiss her remaining claim for economic damages with prejudice, so that she could take an immediate appeal. Following argument, the court granted this request and dismissed the case in its entirety.

- 3 -

Waldinger filed this timely appeal. Waldinger and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Waldinger raises the following two issues:

I. Whether the trial court erred in granting Wokulich's motion for partial summary judgment where a genuine issue of material fact existed as to the nature and extent of Waldinger's injuries, as well as whether she sustained a serious impairment of a bodily function which should have been determined by the trier of fact.

II. Whether the trial court erred in granting Wokulich's motion for partial summary judgment where a genuine issue of material fact existed as to whether Waldinger sustained a permanent disfigurement which should have been determined by the trier of fact.

**See** Waldinger's Brief at ii, 11, 24.

Waldinger claims that the trial court erred in granting Wokulich's motion for partial summary judgment. Specifically, Waldinger argues that the trial court erred in finding that she did not sustain a serious injury as a result of the accident, *i.e.*, a "serious impairment of a body function" and/or "serious permanent disfigurement," as required under the MVFRL to recover non-economic damages.

In her first issue, Waldinger claims that the trial court erred when it concluded she did not sustain a serious impairment of body function. According to Waldinger, the evidence established that she injured her neck, right knee, right hand and wrist. She received treatment for these injuries which included being seen at the emergency room after the accident, chiropractic care, injections and surgical intervention. In 2020, two years

after the accident, Waldinger received another injection for her wrist and had an MRI which showed that she had recurrent tenosynovitis and a small tear of her Triangular FibroCartilage Complex ("TFCC").

Further, Waldinger maintains that her deposition testimony demonstrated that these injuries seriously impaired her ability to perform various daily activities. Waldinger explained that it is painful for her to perform typical daily activities which involve feeling, lifting and using her dominant hand. According to Waldinger, this evidence, when viewed in the light most favorable to her as the non-moving party, which the trial court failed to do, shows that reasonable minds could differ as to whether she sustained a serious impairment of body function. Waldinger therefore maintains that this determination should have been submitted to a fact finder and summary judgment was improper. Waldinger's Brief at 23-24.

The trial court concluded that, although Waldinger sustained injuries from the accident, the medical evidence did not establish that her injuries constituted a serious impairment of a body function. In reaching its decision, the court relied on **McGee v. Muldowney**, 750 A.2d 912, 915 (Pa. Super. 2000); this precedent requires a plaintiff to present objective medical evidence, and not just subjective complaints, to support the existence of a serious impairment. Trial Court Opinion, 6/6/22, at 6. Because Waldinger did not present such evidence, the court granted summary judgment in Wokulich's favor.

Our standard of review regarding an order granting a motion for summary judgment is well settled:

An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the trial court.

To the extent that an appellate court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

[I]n evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered.... Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Albert v. Sheeley's Drug Store, Inc.*, 234 A.3d 820, 822 (Pa. Super. 2020) (internal citations, quotations, and brackets omitted). To withstand a motion for summary judgment, a non-moving party "must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertrel v. Patriot–News Co.*, 674 A.2d 1038, 1042 (Pa. 1996).

In relevant part, the Pennsylvania MVFRL provides:

(4) Limited tort alternative. — Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to the applicable tort law. ***Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss*** . . . .

75 Pa.C.S.A § 1705(d) (emphasis added). Although a plaintiff who has elected the limited tort option can recover all medical and out-of-pocket expenses, such a plaintiff cannot recover for pain and suffering or other non-economic damages unless the plaintiff's injuries fall within the definition of "serious injury." ***See id.*** A "serious injury" is defined as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S.A. § 1702.

Our Supreme Court has determined that the "serious impairment of body function" threshold contains two inquiries:

a) What body function, if any, was impaired because of the injuries sustained in a motor vehicle accident?

b) Was the impairment of the body function serious? ***The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment***. . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious.

***Washington v. Baxter***, 719 A.2d 733, 740 (Pa. 1998) (emphasis added). "Further, evidence of how a particular injury affects a specific plaintiff,

including how that injury negatively impacted the person's ability to perform his or her chosen profession, is relevant in determining whether a plaintiff has suffered a serious impairment of a body function." *Vetter v. Miller*, 157 A.3d 943, 948 (Pa. Super. 2017).

The determination of whether a serious injury has been sustained "should be made by the jury in all but the clearest of cases." *Washington*, 719 A.2d at 740; *Brown v. Trinidad*, 111 A.3d 765, 770–71 (Pa. Super. 2015). However, summary judgment may be granted where a limited-tort plaintiff only presents subjective allegations of a serious impairment without objective medical evidence. *McGee*, 750 A.2d at 914 (stating that a plaintiff must generally present "objective medical evidence as to the degree of any impairment and extent of pain suffered.").

Applying the analysis set forth in *Washington* to this case, we observe that the evidence, when viewed in a light most favorable to Waldinger, established she injured her right knee, neck, back, and, in particular, her right hand and wrist as a result of the accident. These injuries affected her ability to kneel, lift, squeeze, feel sensation in her hand, and use her dominant hand.

Further, in considering whether these impairments were serious, the evidence demonstrated that, following the accident, Waldinger was treated at the emergency room and released just a few hours later; she was directed to ice her knee and wrist and return if the pain worsened or she suffered concussion type symptoms. Although she did not return to the hospital, she

was treated for her injuries for approximately 6 months which included chiropractic care, injections and surgery.

Additionally, the evidence established that Waldinger missed 3 days of work after the accident. Although Waldinger did not need any modifications or accommodations to continue her employment, her hand goes numb when she types and writes all day at work.

Further, Waldinger testified about how her injuries affect her. It is painful for her to kneel. She suffers from what she described as a pinched nerve in her neck. Most notably, Waldinger has chronic pain in her hand and wrist which starts in the morning and continues through the day. It hurts when she performs daily tasks such as squeezing the shampoo bottle, pouring milk into her cereal, and using a brush on her hair. She cannot lift things more than 5 pounds. The pain has persisted even after the surgery.

Arguably, based on her subjective complaints reasonable minds could differ as to whether Waldinger's impairment was serious. This is particularly so given that Waldinger injured her dominant hand and needed surgery to treat it. She continues to experience pain and is still unable to do various daily activities. We are mindful that the need and ability to use one's hand and wrist is important and extensive in daily life.

Significantly, however, the objective medical evidence Waldinger presented showed that she sustained injuries as a result of the accident, but this evidence did not establish that she sustained a serious impairment of body function. To support her case, Waldinger provided the expert report of Dr.

Williams, who treated her for her hand/wrist and knee injuries, dated March 2020. Dr. Williams diagnosed Waldinger with a "small avulsion fracture of the tibial tubercle with associated patellar tendinitis and right wrist de Quervain's tenosynovitis." He initially treated her for pain with injections in her wrist, which provided minimal relief. Ultimately, on October 11, 2018, Waldinger had surgery on her right wrist without complication. When Dr. Williams saw Waldinger after the surgery, Waldinger indicated that "[h]er pain was very well controlled . . . and that she was having no difficulty with her wrist. . . . " "She was to follow up as needed."

In his report, Dr. Williams opined that her prognosis for her injuries was excellent. He further stated that when he saw Waldinger in October of 2018, "she was doing very well in regard to her knee and wrist. At this point, I do not think she will need any further diagnostic testing or treatment concerning her wrist or knee." Dr. Williams noted that his opinions were given based on the fact that, as of the time of his report, he had not seen Waldinger since October 2018.[1]

_____

[1] Waldinger asserts that she had further follow up in June 2020 with a different orthopedic group. However, Wokulich contends that this occurred after the close of discovery and as such was never produced in a supplemental discovery response. Although it was attached to Waldinger's response in opposition to Wokulich's motion, Pennsylvania Rule of Civil Procedure 4007.4 places a party under a duty to amend a prior responsive pleading if that party obtains information upon the basis of which he knows that the response, though correct when made, is no longer true. Rule 4019 states that the court may prohibit introduction of designated evidence at trial if a party fails to make proper discovery or to obey an order of court respecting discovery. **See**
*(Footnote Continued Next Page)*

Notably, Dr. Williams' report did not indicate the extent of Waldinger's pain or the extent to which her injuries impacted her life following the accident. Additionally, the report did not provide any information to support Waldinger's ongoing complaints and claims that her injuries continue to affect her. Instead, Dr. Williams gave Waldinger a good prognosis without any need for further treatment. Consequently, even when viewing the evidence in the light most favorable to Waldinger, because the objective medical evidence does not support Waldinger's subjective claims, we conclude that reasonable minds could not differ that she did not suffer a serious injury as a result of the accident. Accordingly, the trial court did not error or abuse its discretion in granting summary judgment on this issue in Wokulich's favor.

In her second issue, Waldinger similarly claims that the trial court erred when it concluded she did not suffer from a serious permanent disfigurement. Waldinger argues that the evidence showed she has a two-inch scar on the side of her wrist from the surgery. She testified that the scar has not faded

_____

*Leahy v. McClain*, 732 A.2d 619, 624 (Pa. Super. 1999). Given these circumstances, the trial court did not consider this additional evidence. We note that Rule 1035(b) allows a party to supplement the record to produce evidence to overcome a motion for summary judgment. *See Monroe v. CBH20, LP.*, ____ A.3d ____, 2022 WL 17087072 at *13 (Pa. Super. November 21, 2022). However, Waldinger did not raise this as a specific error on appeal and therefore any argument that we may properly consider this evidence is waived.

- 11 -

even after 4 years and is blatantly visible; she cannot cover the scar with clothing all the time. Additionally, according to Waldinger, people have asked her about the scar and that it is a "little bit" embarrassing. Waldinger maintains that, viewing this evidence in the light most favorable to her as the non-moving party, which the trial court failed to do, reasonable minds could differ whether her scar is a serious permanent disfigurement. As such, Waldinger contends that this issue should have been left for the fact finder to decide rendering summary judgment improper. Waldinger's Brief at 25.

The trial court concluded as a matter of law that the scar on Waldinger's wrist was not a serious permanent disfigurement. Although Waldinger had a scar on her wrist, the court noted that Waldinger offered no evidence as to how the scar affected her daily life; mere embarrassment is not enough. Further, Waldinger did not seek any follow up medical treatment for her scar. Consequently, the trial court granted Wokulich's motion for summary judgment. Trial Court Opinion, 6/6/22, at 7.

Initially, we observe that the MVFRL is silent as to what constitutes a "serious permanent disfigurement." Additionally, there is no appellate authority defining this phrase as contemplated by the MVFRL. The dissenting opinion in **Holland ex rel. Holland v. Marcy**, 817 A.2d 1082, 1096–97 (Pa. Super. 2002), *aff'd sub nom.* **Holland v. Marcy**, 883 A.2d 449 (2005) referenced by **Levin v. Potts, III**, 2019 WL 8438486 (Pa. Com. Pl. Sept. 17, 2019), on which the trial court relied, while offering some guidance, is not

precedential.[2]  Therefore, before we can address whether Waldinger adduced sufficient evidence to withstand summary judgment in this case, we must consider the meaning of serious permanent disfigurement.

To do so, we first consider the dictionary definitions of the terms of serious, permanent and disfigurement, "which offer adequate direction for statutory interpretation consistent with the Statutory Construction Act." **See**

---

[2] In **Holland**, the dissent considered whether a single scar on the plaintiff's forehead constituted a serious permanent disfigurement so that the recovery of non-economic damages should be submitted to a jury.  Noting the lack of appellate authority, the court considered guidance from New Jersey caselaw interpreting similar language in a New Jersey statute.

> In **Falcone v. Branker**, 135 N.J.Super. 137, 342 A.2d 875 (1975), the Superior Court of New Jersey employed a sound analysis for determining when a scar constitutes permanent serious disfigurement for purposes of its statutory equivalent to the limited tort option of the MVFRL.  The [c]ourt examined case law regarding the definition of permanent serious disfigurement in the workers' compensation area and concluded that to fall within that definition, the scar must impair the symmetry or appearance of the plaintiff such that he is unsightly, misshapen, imperfect, or deformed in some manner. The Court also opined that a facial scar that mars to such an extent as to attract attention would be a serious disfigurement.  According to the *Falcone* court, whether a disfigurement fulfills the statutory definition is determined by the following objective factors: the scar's appearance, coloration, existence and size. It noted, however, that a scar that becomes progressively less apparent with time would not be permanent.  **See also Hammer v. Township of Livingston**, 318 N.J.Super. 298, 723 A.2d 988 (1999).

**Holland**, 817 A.2d at 1096-97.  The dissent concluded that the plaintiff's scar was significant enough to create a jury question as to whether it concistuted a permanent serious disfigurement.  **Id.** at 1097.

- 13 -

***Zator v. Coachi***, 939 A.2d 349 (Pa. Super. 2007).  In relevant part, "serious" is defined as "not trifling (not lacking in significance) . . .  excessive or impressive in quality, quantity, extent, or degree."[3] [4]  "Permanent" means "continuing or enduring without fundamental or marked change (as in permanent injuries)."[5]  "Disfigurement" is the act or instance of disfiguring . . . something that disfigures, as a scar."[6]  In turn, "disfigure" means "to mar the appearance or beauty of; deform; deface . . . ."[7]  It also is defined as:  "to impair (as in beauty) by deep and persistent injuries."[8]

---

[3]  "Serious."  *Merriam Webster.com. Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/serious.  Accessed 17 Jan. 2023.

[4] When considering the existence of a "serious impairment of body function," we have stated "[o]bviously, the word "serious" must be understood as "significant" and "important", involving an injury with consequences that are more than just minor, mild or slight."  ***Dodson v. Elvey***, 665 A.2d 1223, 1234 (Pa. Super. 1995), *rev'd on other grounds*, 720 A.2d 1050 (1998).

[5]  "Permanent."  *Merriam Webster.com. Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/permanent.  Accessed 17 Jan. 2023.

[6] "Disfigurement." Dictionary.com, https://ww.dictionary.com/disfigurement Accessed 17 Jan. 2023.

[7]  "Disfigure."  Dictionary.com, https://www.dictionary.com/disfigure.  Accessed 17 Jan. 2023.

[8]  "Disfigure."  *Merriam Webster.com. Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/disfigure.  Accessed 17 Jan. 2023.

Additionally, the Pennsylvania Workers' Compensation Act, 77 P.S. § 1 *et seq.*, offers some guidance. The Act provides for the award of benefits where a claimant sustains a "serious and permanent disfigurement" resulting from a work injury. 77 P.S. § 513(22). To recover, such disfigurement must be of a "character to produce an unsightly appearance" and such recovery is limited to a disfigurement of the head, neck or face.[9] ***Id.*** We observe that "unsightly" means "distasteful or unpleasant to look at."[10] Notably, when considering whether a scar warrants compensation, it has been observed that:

> [t]he "unsightly appearance" requirement has produced the commonsense rule that not every mark or residual of an injury to the head, neck or face will constitute disfigurement. *The claimant may well suffer some alteration . . . yet not be entitled to any award at all.*
>
> * * *
>
> The claimant must prove not merely that he or she has a scar or other blemish, but that the complained-of mark is disfiguring.

***Walker v. Workers' Comp. Appeal Bd. (Health Consultants)***, 42 A.3d 1231, 1236 (Pa. Commw. 2012) (quoting DAVID B. TORREY AND ANDREW E. GREENBERG, WORKERS' COMPENSATION LAW AND PRACTICE § 7:42 (3d ed. 2008) (emphasis added). Personal examination of the claimant's physical

---

[9] The MVFRL does not contain the same limiting language that a serious permanent disfigurement must occur to the head, neck or fact.

[10] "Unsightly." *Merriam Webster.com. Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/unsightly. Accessed 17 Jan. 2023.

appearance rather than looking at a photograph is preferred; the accuracy of a photograph depends on various factors such as lighting, camera quality, skill of the photographer, focus etc. *Walker*, 42 A.3d at 1235–36 (citing *Hastings Indus. v. Com., W.C.A.B. (Hyatt)*, 611 A.2d 1187 (Pa. 1992)).

Based upon this guidance, we conclude that a "serious permanent disfigurement" requires that one's appearance, form or beauty be affected or marred in a displeasing, harmful way which is significant and not minor and will not change, go way or be diminished. We recognize that such a determination can be very subjective. Consequently, taking from *Washington*, we set forth a similar inquiry to apply.

> What disfigurement, if any, resulted from the motor vehicle accident?
>
> Was the disfigurement permanent?
>
> Was the disfigurement serious? In determining whether the disfigurement is serious, several factors should be considered: appearance, obviousness, size, shape, symmetry, coloration, and any other relevant factors.

Applying the foregoing here, we first observe that the particular disfigurement at issue is a scar. As noted above, a scar in and of itself is disfiguring. Nevertheless, we recognize that not every scar is permanent or serious.

Regarding the permanence of Waldinger's scar, the evidence showed that 4 years had passed since the accident and Waldinger's scar remained unchanged. As the trial court determined, this evidence was sufficient to

establish that Waldinger's scar was permanent. Although generally competent medical evidence is required to support a factual finding that a disfigurement is permanent, it is not necessary where circumstances permit the fact finder to determine from his own observations whether the disfigurement is permanent. *EPurex Corp. v. Workmen's Comp. Appeal Bd.*, 445 A.2d 267, 269 (Pa. Commwlth. 1982), *abrogated by* *Hastings*, 611 A.2d at 1187. Such circumstances may exist where a period of time has passed between the occurrence of the injury and the examination of the disfigurement. *Id.*; *but cf. Workmen's Compensation Appeal Board v. Pizzo*, 346 A.2d 588 (Pa. Commw. 1975) (referee could not properly take judicial notice of the permanence of an eye injury resulting in closing of right eyelid and squinting). Thus, we agree with this conclusion even though no medical evidence was presented to establish permanency.

As for whether Waldinger's scar was serious, the evidence showed that the scar was on Waldinger's wrist and was two inches long. Considering the relevant factors to determine if a disfigurement is serious, we disagree with the trial court that this is the clearest of cases. Instead, we find that, when viewing this evidence in the light most favorable to Waldinger, reasonable minds could differ as to whether Waldinger's scar is a serious disfigurement. We base our conclusion on the size of the scar and its location. Two inches is not so insignificant. The scar is in a prominent place on Waldinger's body. As Waldinger claimed, it cannot always be concealed. Further, we observe that one's hands are constantly in use and readily visible most of the time. These

factors directly relate to the extent to which the scar detracts from Waldinger's appearance, which is the critical inquiry in a "serious permanent disfigurement case."

In granting summary judgment, the trial court did not consider the effect Waldinger's scar had on her appearance. Instead, it focused on the impact Waldinger's scar had on her life. Unlike the serious impairment of body function analysis, this not the appropriate inquiry. Certainly, the impact a disfigurement has on an individual, such as whether it is embarrassing or creates self-esteem issues is relevant but, it is not the primary factor. Instead, the inquiry is the effect on the person's appearance.

Additionally, the trial court relied on Waldinger's failure to offer medical evidence showing that she sought any follow up treatment for her scar. Although treatment of a disfigurement may be a relevant factor in determining whether a disfigurement is serious, it is also not the primary consideration. Again, the pertinent inquiry is how the injury affects the plaintiff's appearance. Unlike the serious impairment of a body function question, medical evidence is not necessary to determine whether a scar impacts one's appearance.

When viewing the evidence in the light most favorable to Waldinger, we conclude that reasonable minds could differ as to whether her scar constitutes a serious permanent disfigurement. As such, a jury question exists regarding whether Waldinger sustained a serious permanent disfigurement and is entitled to any non-economic damages arising from the accident. Consequently, the trial court erred in granting summary judgment in favor of

Wokulich on the question of serious disfigurement. We therefore reverse the court's order granting summary judgment on her claims for non-economic damages.

Order reversed. Remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2023