**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2169-17T3

TYRONE BEATTY,

    Plaintiff-Appellant,

v.

MICHAEL BRESCHARD and
NEW JERSEY TRANSIT
CORPORATION,

    Defendants-Respondents.

_____

Submitted November 27, 2018 – Decided December 26, 2018

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1405-16.

Spear, Greenfield, Richman, Weitz & Taggart, PC, attorneys for appellant (Marc F. Greenfield and Jeremy M. Weitz, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondents (Melissa H. Raksa, Assistant Attorney General, of counsel; Andrew C. Munger, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff appeals an order that granted summary judgment to defendants Michael Breschard and New Jersey Transit Corporation (NJ Transit), dismissing his claims for economic and non-economic damages with prejudice. The motion judge concluded plaintiff failed to present a prima facie case of liability under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, finding plaintiff failed to demonstrate he suffered the permanent loss of a bodily function that was substantial. We reverse.

We summarize the following facts from the summary judgment record, viewing "the facts in the light most favorable to [plaintiff,] the non-moving party." Globe Motor Co.v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)). On September 19, 2014, plaintiff was the operator of a motor bus that was stopped in traffic in the right lane when a NJ Transit bus, operated by Breschard, struck the bus operated by plaintiff on the driver's side, forcing it up onto the raised pavement on the side of the road.

Plaintiff struck the interior side of the bus and felt a "pop" in both of his shoulders while he held onto the steering wheel to attempt to keep the bus from being further forced off the roadway. Plaintiff suffered a small superior labral tear at the acromioclavicular joint in his left shoulder, a partial thickness tear of

A-2169-17T3

the long head of the biceps tendon, and a SLAP tear[1] of the glenoid labrum in his right shoulder. Plaintiff underwent two arthroscopic procedures for his right shoulder and one arthroscopic procedure for his left shoulder.

Four months after the accident, Dr. Todd Chertow performed a right shoulder arthroscopic debridement of the SLAP tear, as well as arthroscopic rotator cuff repair. Anchors were implanted as part of the procedure. In November 2015, Dr. Joseph M. Sewards performed a second right shoulder arthroscopy with open subpectorial biceps tenodesis. A seven millimeter by ten millimeter BioComposite screw was implanted. In July 2016, Dr. Sewards performed a left shoulder arthroscopy and debridement of a partial-thickness supraspinatus tear, with an open subpectorial biceps tenodesis.

In May 2017, Dr. Mark D. T. Allen, a Board Certified Orthopedic Surgeon, conducted a medical evaluation of plaintiff. Dr. Allen found plaintiff has forward flexion in both shoulders to 160 degrees and abduction to 160 degrees. Plaintiff's left shoulder exhibited a positive apprehension sign, particularly with downward pressure. His right shoulder exhibited a positive impingement sign. Dr. Allen's diagnosis was "[s]tatus post arthroscopic surgery

---

[1] SLAP is an acronym for "superior labral tear from anterior to posterior," and refers to an injury to the labrum of the shoulder, which is the ring of cartilage surrounding the socket of the shoulder joint.

A-2169-17T3

of the left shoulder with evidence of a superior labral tear" and "[s]tatus post arthroscopic surgery of the right shoulder x2 for residual symptoms after a debridement procedure for a superior, anterior, and posterior labral tear and indications of residual rotator cuff dysfunction." Dr. Allen opined "within a reasonable degree of medical certainty" that these:

> diagnoses are a direct result of the incident that occurred while on duty as a bus driver on September 19, 2014. Mr. Beatty remains symptomatic despite the arthroscopic procedures. It is clear that these injuries have become chronic and will continue to limit the use of both upper extremities on an ongoing basis. . . . Overall, this patient warrants a guarded prognosis.

Plaintiff was deposed and testified he was unable to perform household chores and other activities, which require him to either "stretch out" his shoulders by reaching high above his head or down low, such as carrying groceries, stirring while cooking, or performing yardwork. He cannot play with his daughter for too long, play basketball for more than one shot, or throw a football. Plaintiff also testified he is unable to "carry as much" as he used to be able to and that he often has trouble washing his back on his own. Plaintiff stated he was employed as a trash truck driver.

At the conclusion of discovery, defendants moved for summary judgment, arguing plaintiff did not meet the TCA's verbal threshold for recovery of non-

4

economic damages, N.J.S.A. 59:9-2(d). During oral argument on defendants' motion, plaintiff conceded he had no uncompensated economic damages because all of his economic damages had been covered by workers' compensation benefits. The motion judge concluded plaintiff's injuries were not significant enough to meet the threshold requirements of N.J.S.A. 59:9-2(d), and granted defendants' motion. This appeal followed.

Plaintiff argues the trial court erred in granting summary judgment to defendants because he demonstrated by objective medical evidence that his injuries vault the threshold imposed by N.J.S.A. 59:9-2(d). Plaintiff asserts he has provided objective medical evidence of permanent shoulder injuries through MRIs, operative reports detailing his shoulder surgeries, and an expert report opining his injuries are permanent. Plaintiff contends he has suffered a permanent loss of a bodily function that is substantial because of the adverse impact his injuries have had on his ability to perform household chores and other activities and because his injuries required surgical intervention and the implantation of metal screws and other hardware in his right shoulder to mimic its natural function.

We review the grant of summary judgment de novo, applying the same standard used by the trial court, which

A-2169-17T3

mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

[Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

We also determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis or interpretation of a statute. The Palisades At Ft. Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"[I]n order to vault the pain and suffering threshold under the [TCA], a plaintiff must satisfy a two-pronged standard by proving (1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." Gilhooley v. Cty. of Union, 164 N.J. 533, 540-41 (2000) (citing Brooks v. Odom, 150 N.J. 395, 402-03 (1997)). "Temporary injuries, no matter

6

how painful and debilitating, are not recoverable." Brooks, 150 N.J. at 403. In addition, plaintiff's medical expenses must exceed $3600. N.J.S.A. 59:9-2(d).

Based on his physical examination of plaintiff and his review of the medical records, plaintiff's expert opined plaintiff suffered permanent shoulder injuries as a result of the motor vehicle accident. Defendants do not dispute plaintiff has presented objective medical evidence of a permanent injury. Instead, they argue plaintiff is able to function, albeit with limitations. As noted by the Court in Gilhooley, "that every objective permanent injury results in substantial loss of a bodily function does not follow." 164 N.J. at 541. "Each case is fact sensitive." Ibid.

"[W]hen a plaintiff suffers an injury that permanently would render a bodily organ or limb substantially useless but for the ability of 'modern medicine [to] supply replacement parts to mimic the natural function,' that injury meets the threshold." Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 332 (2003) (quoting Gilhooley, 164 N.J. at 542). In Gilhooley, the plaintiff injured her knee so severely that open reduction and internal fixation with surgically implanted pins were required to make it functional again. 164 N.J. at 536-37. The plaintiff returned to work in her full capacity but continued to experience stiffness and

pain in her knee. Id. at 537. In reversing our affirmance of the trial court's grant of summary judgment, the Court said:

> As is the case with dismemberment and disfigurement, when pins, wires, mechanisms and devices are required to make the plaintiff normal, the statutory standard is met. The fact that a physician has jury-rigged the knee to function with pins and wires in no way inhibits the characterization of that injury as the permanent loss of a bodily function.
>
> [Id. at 542-43.]

Plaintiff's situation is similar. Plaintiff is employed as a truck driver and can perform some routine tasks without significant limitation. However, "a plaintiff's ability to resume some of his or her normal activities is [not] dispositive of whether he or she is entitled to pain and suffering damages under the TCA." Knowles, 176 N.J. at 332 (citing Kahrar v. Borough of Wallington, 171 N.J. 3, 15-16 (2002)).

Viewing the evidence in the light most favorable to plaintiff, the grant of summary judgment was improper. Like the plaintiff in Gilhooley, only the insertion of anchors in plaintiff's right shoulder during two surgeries permits the joint to "mimic [its] natural function." Id. at 542. Plaintiff's medical proofs support a claim of permanent injury that is based on objective evidence, not mere subjective complaints. "[S]uch evidence raises an issue for the jury, and

8

removes the case from the realm of summary judgment." Knowles, 176 N.J. at 335 (quoting Gerber v. Springfield Bd. of Educ., 328 N.J. Super. 24, 35 (App. Div. 2000)). We therefore reverse summary judgment and remand the matter to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2169-17T3