**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1489-17T4

WILLY FRANKEL and
JILLIAN FRANKEL, his wife,

     Plaintiffs-Appellants,

v.

EDGEWATER MULTIPLEX
CINEMAS, NATIONAL
AMUSEMENTS, INC.,

     Defendants-Respondents.

_____

Argued December 6, 2018 – Decided March 7, 2019

Before Judges Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4487-15.

Francesca Nicholas argued the cause for appellants (Law Offices of Rosemarie Arnold, attorneys; Francesca Nicholas, on the briefs).

John J. Leo, III argued the cause for respondents (Kaufman Borgeest & Ryan LLP, attorneys; Michael P. Mezzacappa, of counsel and on the brief).

PER CURIAM

Plaintiffs, Willy Frankel and his wife Jillian Frankel, appeal from the October 13, 2017 Law Division order denying reconsideration of a September 1, 2017 order granting defendants' motion for summary judgment in this slip-and-fall case. We affirm.

The following facts are derived from the evidence submitted in support of and in opposition to the summary judgment motion and the motion for reconsideration, which we view in the light most favorable to plaintiffs. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). When reviewing a grant of summary judgment, this court uses the same standard as the trial court. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).

We note plaintiffs appealed the order denying their motion for reconsideration, not the order motion granting summary judgment. "Consequently, if the notice [of appeal] designates only the order entered on a motion for reconsideration, it is only that proceeding and not the order that generated the reconsideration motion that may be reviewed." Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1(f)(1); see also W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 458-59 (App. Div. 2008). "The decision to deny a motion for reconsideration falls 'within the sound

discretion of the [trial court], to be exercised in the interest of justice.'" In re Belleville Educ. Assoc., 455 N.J. Super. 387, 405 (App. Div. 2018) (alteration in original) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)).

> Reconsideration should only be used "for those cases which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence."
>
> [Ibid.]

We review for abuse of discretion. Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 362 (App. Div. 2018).

Plaintiffs filed a complaint seeking damages for the injuries Willy sustained after a slip and fall in defendants' movie theater.[1] They went to see a 6:30 p.m. movie in October 2014. The theater was crowded, so Willy took the first seat in the first row, while Jillian sat several rows behind him. Willy's seat was adjacent to an emergency exit door. When the movie ended, Willy got up from his seat to make his way to the lobby. In his deposition, Willy testified he

---

[1] Jillian Frankel asserts a per quod claim. We refer to the plaintiffs by their first names because they share the same surname. By doing so, we mean no disrespect.

A-1489-17T4

saw trash or debris on the floor, tripped over it, and "fell right into the [emergency exit] door on a metal bar." Willy suffered a crush avulsion and a large laceration to his forehead. Jillian did not see what caused Willy trip but upon seeing Willy fall, ran into the lobby to call for help. Willy testified in his deposition he saw "litter" when he first sat down in the theater before the movie, but "paid it no mind." He later stated he did not see the trash before he fell, but believed the "trash" "could have been popcorn, could have been trays. It could have been anything."

According to Loria Vona, the concessions manager on the night of Willy's injury, the theater has sixteen auditoriums. "Ushers" clean the auditoriums after each show. One usher walks around with a garbage bag and the head usher uses a broom to sweep garbage to the end of each aisle. Ushers also clean up any spills or bodily fluids, and use a wet floor sign when necessary. The "breach person" is responsible for inspecting auditoriums each hour to check sound levels, lighting levels, cell phones, talking patrons, or any items posing a tripping hazard. The breach person is required to complete a "patrol card" after each inspection. On the evening of Willy's injury, patrol cards show auditorium six, where Willy was injured after the 6:30 p.m. movie, was inspected on an

hourly basis between 12 p.m. and 5 p.m., and twice at 6 p.m., 7 p.m., 8 p.m., and 9 p.m.

Vona completed an incident report. She examined the area where Willy fell and found "[t]here was no carpet damage or any items in his way to cause his fall." The head usher contributed to the incident report and stated, "[a]fter the patron was taken away by the EMTs, I thoroughly inspected the area for snags or rips in the carpet or anything that could have caused the patron to lose balance and found nothing." She also recalled checking the floor for spills but did not find any.

After reviewing the parties' submissions and hearing argument, the trial court entered summary judgment because plaintiffs could not prove defendants breached the duty of care they owed to patrons. Even if Willy did slip on trash, plaintiffs alleged no facts tending to show defendants were under actual or constructive notice of debris on the floor. Plaintiffs moved for reconsideration and Willy submitted a certification stating he saw "trash/debris" when he sat down in the auditorium and it was the same "trash/debris" he tripped over. Plaintiffs argued defendants must have had constructive notice of the debris, because the debris he tripped over was the same as what he observed when taking his seat. The trial court denied plaintiffs' motion on October 13, 2017.

A-1489-17T4

This appeal followed. On appeal, plaintiffs argue that in the face of disputed facts bearing on the issue of constructive notice, summary judgment was improperly granted.

"In general, '[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is in the scope of the invitation.'" Stelluti v. Casapenn Enters., LLC, 408 N.J. Super. 435, 446 (App. Div. 2009) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)). "The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Nisivoccia, 175 N.J. at 563; see also Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013). Such a duty is imposed because "business owners 'are in the best position to control the risk of harm.'" Hojnowski v. Vans Skate Park, 187 N.J. 323, 335 (2006) (quoting Kuzmicz v. Ivy Hill Park Apartments, Inc., 147 N.J. 510, 517 (1997)).

To recover for injuries suffered, a plaintiff must establish the defendant had actual or constructive knowledge of the dangerous condition that caused the accident, in addition to establishing the defendant's duty of care. Nisivoccia, 175 N.J. at 563. "An inference [of negligence] can be drawn only from proved

facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." Prioleau v. Ky. Fried Chicken, Inc., 434 N.J. Super. 558, 570-71 (App. Div. 2014) (quoting Long v. Landy, 35 N.J. 44, 54 (1961)), aff'd in part and modified in part, 223 N.J. 245 (2015). When a patron is injured by a dangerous condition, the business operator is liable "if [the business operator] actually knew of the dangerous condition or if the condition had existed for such a length of time that [the business operator] should have known of its presence." Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964).

Here, plaintiffs could not identify what Willy slipped on with any precision. Still, plaintiffs maintain they are entitled to an inference the theater employees were on notice of debris on the floor and therefore responsible for Willy's injury. Plaintiffs argue a reasonable jury could conclude, based solely on Willy's fall, theater employees were aware of and had time to remedy a dangerous condition. Therefore, plaintiffs contend the judge misapplied the Brill standard by failing to give plaintiffs all favorable inferences.

We agree a judge should not resolve a dispute on the merits when granting summary judgment if a rational jury could have disagreed as to the outcome. See Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 50 (2012). "It [is] not the court's function to weigh the evidence and determine the outcome but only to decide if

a material dispute of fact existed."  Gilhooley v. Cty. of Union, 164 N.J. 533, 545 (2000).  But that is not what the motion judge did.  Here, the judge rejected plaintiffs' unsupported contention defendants had constructive notice of debris on the floor and that it remained there for more than two hours.  Moreover, plaintiffs never established what exactly caused Willy to slip and fall.  Accepting, as we must, plaintiffs' testimony and all reasonable inferences that flow from it, Globe Motor Co., 225 N.J. at 481, Willy's assertion he saw debris that remained on the floor during the duration of the movie and caused him to fall, does not establish defendants were aware of the debris, either actually or constructively.

Therefore, we discern no abuse of discretion in the denial of plaintiffs' motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1489-17T4