**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2663-23

DOMINGA SANCHEZ,

    Plaintiff-Appellant,

v.

JORGE INOA-TEJADA and
CITY OF PERTH AMBOY,

    Defendants-Respondents.

_____

> Argued February 25, 2025 – Decided May 21, 2025
>
> Before Judges Perez Friscia and Bergman.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4727-22.
>
> Paul F. O'Reilly argued the cause for appellant (Law Offices of James Vasquez, PC, attorneys; James Vasquez and Paul F. O'Reilly, on the brief).
>
> Tyler Newman argued the cause for respondents (Murphy Orlando, LLC, attorneys; Jason F. Orlando, John W. Bartlett and Tyler Newman, on the brief).

PER CURIAM

Plaintiff Dominga Sanchez appeals from a summary judgment order granted to defendants Jorge Inoa-Tejada and City of Perth Amboy dismissing her complaint. The court determined plaintiff failed to meet the injury threshold pursuant to N.J.S.A. 59:9-2(d) of the Tort Claims Act, N.J.S.A. 59:1-1 to -59:12-3 (TCA). After our review of the record and application of the relevant legal principles, we conclude genuine issues of material fact exist that plaintiff's injuries satisfied the threshold requirements of the TCA which precluded summary judgment and, therefore, we reverse.

I.

In November 2020, plaintiff was a passenger in an automobile travelling in Perth Amboy. At the same time, defendant Jorge Inoa-Tejada was operating a vehicle in his capacity as a police officer for Perth Amboy. Inoa-Tejada allegedly ran a stop sign and collided with plaintiff's vehicle resulting in her sustaining injuries. Immediately after the accident, plaintiff was taken to a hospital by ambulance where she received treatment and was released.

Plaintiff started treating with a chiropractor for neck, back and left shoulder injuries the week after the accident which continued until March 1, 2021. Plaintiff also had magnetic resonance imaging (MRI) testing performed. The MRI's revealed a left shoulder rotator cuff tear, six disc herniations and a

2

disc bulge. On March 5, plaintiff started treating with Hudson Premiere Health Partners as well as Spine and Rehabilitation Centers of New Jersey for her injuries. Her treatments consisted of chiropractic manipulations, physical therapy, and ultrasound stimulation. In addition to receiving conservative treatments for twenty months, plaintiff also underwent six "trigger point" and "nerve block" injections to her spinal discs, two injections to her left shoulder and two arthroscopic shoulder surgeries. Her treatment concluded on or about August 8, 2022.

On September 20, 2022, plaintiff filed a complaint against defendants claiming she sustained injuries caused by the accident. After the close of discovery, defendants moved for summary judgment contending plaintiff's injuries did not meet the requirements of the TCA pursuant to N.J.S.A. 59:9-2(d). Defendants admitted liability for purposes of the motion. In its decision, the trial court found plaintiff met the first prong of Gilhooley[1] stating "[t]here is no debate here . . . [that] there may be or certainly would be a disputed issue as to whether there is an objective permanent injury." The court's analysis primarily focused on the second prong of Gilhooley—whether there was a permanent loss of a bodily function that was substantial. The trial court

---

[1] Gilhooley v. County of Union, 164 N.J. 533 (2000).

ultimately concluded under the heightened standard of the TCA that there was "no evidence that [,] as plaintiff's counsel candidly admitted, [] demonstrate that there's a permanent loss of bodily function that would require this motion to be [] denied."  This appeal followed.

Plaintiff contends her MRI testing revealed a left shoulder rotator cuff tear, six disc herniations, and a disc bulge.  Plaintiff contends the MRI films coupled with her permanent physical limitations found by her medical experts constitute objective permanent injuries and a permanent loss of a bodily function that is substantial, satisfying the TCA's injury threshold.

Plaintiff asserts in her motion opposition before the trial court that she provided several examples of substantial and permanent losses of functionality to her left shoulder, neck and back including permanent losses of range of motion use of those body parts.  She contends the MRI findings and narrative reports from her medical experts created genuine factual issues that her injuries satisfied the TCA's injury threshold in order to recover for her pain and suffering.  Plaintiff points to the narrative report of her medical experts Robert Albano, D.C. and Joannie Connor-Charles, D.C. which found she suffered a permanent loss of the use of her cervical and lumbar spine.  Their dual report found:

She has been advised that there is a <u>significant permanent limitation</u> of the use of the spine due to damage to the spinal musculature/ligaments and as further set forth in this report. The continuous episodes of pain, spasm and reduced range of motion in the injured areas are secondary to the bleeding and scarring within the injured tissues themselves.

In my experience with similar cases, it is my impression that the patient has suffered permanent residuals of disability as a result of the automobile accident, which will significantly limit the function as well as the use of her body and will also restrict her customary and social activities in a permanent fashion  It is my professional opinion that <u>this patient has suffered partial permanent loss of the use of the cervical and lumbar spine</u>, which leaves her with great difficulty performing to a great extent her usual and customary activities without pain.

[(Emphasis added).]

Plaintiff contends the report demonstrates serious permanent deficits in the range of motion to her cervical and lumbar spine. Plaintiff emphasizes that in ten out of twelve tests, her range of motion was fifty percent or less than the normal range. Further, in her final range of motion tests conducted several months post-accident, five of six tests revealed a range of motion that was only thirty-three to forty-three percent of a normal range of motion in her neck and back.

Plaintiff also contends that the spinal range of motion test results reported in the defense doctor's medical exam showing zero deficits in her range of

5

motion were starkly different from her own medical experts' opinion, which she contends reveals a "disputed genuine material issue of fact" precluding summary judgment. Plaintiff further argues the testing performed on her shoulder showed motion deficits and impingement. Plaintiff also notes the testing performed on her showed her muscle strength was three out of five in her left shoulder.

Plaintiff certified she was experiencing pain and discomfort when standing or driving for long periods of time. Plaintiff stated that the pain and discomfort also interfere with her daily activities. Specifically, she claimed she was unable to carry heavy objects such as grocery bags. Plaintiff also certified she was unable to perform household chores such as vacuuming and laundry. Plaintiff expressed that she had difficulty making her bed, putting on her shoes and clothes, preparing meals, and taking out the trash. Plaintiff also certified that she was experiencing interrupted sleep due to pain and morning stiffness in her left shoulder, neck, and back. Plaintiff stated she was unable to run and exercise as she did prior to the accident, due to pain and weakness in the left shoulder, neck, and back. Finally, she certified she was unable to perform her daily activities at work and in her personal life in the same way as she did prior to the accident.

At her deposition, plaintiff testified that her physical limitations due to the injuries made her unable to work. Specifically, she testified she was hired at a car wash but could not perform the tasks required due to her shoulder injury as she was unable to lift her left arm. Plaintiff stated she and her son live with her lifelong friend who is financially supporting them. Plaintiff stated her son helps her with lifting heavy items and she has trouble folding clothes because of her neck pain. Plaintiff further testified her back hurts when she attempts to mop requiring her son to finish this chore. Plaintiff also testified that she was experiencing back pain because of the disc impingement. Plaintiff admitted that her job opportunities are limited due to her immigration status—a point defendants asserted was the true cause for her losing her job at the car wash.

Plaintiff argues her injuries are similar to those of plaintiff's in Kahrar v. Borough of Wallington, which found that a forty percent range of motion deficit suffered by the plaintiff vaulted the TCA injury threshold. 171 N.J. 3, 16 (2002). Plaintiff specifically contends that she has experienced a significant loss of motion and weakness in both her spine and shoulder and that her spine showed fifty percent or less range of motion in several tests. Plaintiff further contends her injuries were analogous to the plaintiff's in Kahrar because her shoulder was unable to function at all before undergoing surgery. Plaintiff also notes her two

7

surgeries significantly altered the structure of her shoulder by removing bones, ligaments, cartilage, and soft tissue. Plaintiff also notes the similarity between her injuries and the plaintiff's injuries in Knowles v. Mantua Township Soccer Association where the Court determined plaintiff had satisfied the TCA threshold by the production of objective medical evidence of a permanent injury which forced him to give up his job. 176 N.J. 324, 332 (2003).

Plaintiff contends the allegations in her complaint, answers to interrogatories, deposition testimony, medical records, medical expert narrative reports and certification provided proofs of an objective permanent injury which caused a permanent loss of a bodily function that was substantial. She argues this evidence created issues of material fact precluding summary judgment.

## II.

We review the grant of summary judgment de novo, applying the same legal standards as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019). Thus, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see R. 4:6-2.

The TCA declares that the public policy of New Jersey is that public entities shall only be liable for their negligence within the limitations of the TCA. Within the sphere of the TCA, public entities and public employees—unlike private companies and their employees—have the benefit of multiple immunities that shield them from liability. N.J.S.A. 59:2-1(a). With those immunities and other exceptions in mind, the TCA provides that a public entity is liable for an injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances. N.J.S.A. 59:2-2(a), 59:3-1(a).

The TCA limits the circumstances in which a public entity may be liable for noneconomic damages in the form of pain and suffering. The relevant section states:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function[.]

> [N.J.S.A. 59:9-2(d).]

To recover for noneconomic damages, a plaintiff must produce "objective medical evidence that the injury is permanent." Brooks v. Odom, 150 N.J. 395,

402-03 (1997). A plaintiff may not recover for temporary injuries or "subjective feelings of discomfort." Id. at 403 (quoting Ayers v. Township of Jackson, 106 N.J. 557, 571 (1987)). A plaintiff must "satisfy a two-pronged standard by proving (1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." Gilhooley, 164 N.J. at 540-41. There is no bright line test to determine whether an injury presents both a permanent and substantial loss of a bodily function. See Knowles, 176 N.J. at 331. The analysis is fact-sensitive and differs depending on the facts set forth in each case. Ibid.

In Knowles, the Court explained that to recover pain and suffering damages under the Act:

> [t]here must be a 'physical manifestation of [a] claim that [an] injury . . . is permanent and substantial.' An injury causing lingering pain, resulting in a lessened ability to perform certain tasks because of the pain, will not suffice because '[a] plaintiff may not recover under the [TCA] for mere 'subjective feelings of discomfort.'
>
> [Id. at 332 (alterations and omission in original) (citations omitted) (quoting Ponte v. Overeem, 171 N.J. 46, 54 (2002) and Gilhooley, 164 N.J. at 540).]

### III.

Based on our review of the record, we concur with the trial court's finding that plaintiff demonstrated objective evidence of a permanent injury primarily based on the results of the MRIs showing cervical and lumbar herniations as

10

well as a torn rotator cuff in her left shoulder under the first prong of <u>Gilhooley</u>.

In evaluating the seminal issue in this appeal, which concerns whether plaintiff

has satisfied the second prong of <u>Gilhooley</u> by showing a permanent loss of a

bodily function that is substantial, we are required to view the evidence in the

summary judgment record in a light most favorable to her.  Guided by this

standard, the medical evidence in the record shows plaintiff's injuries consisted

of:

> left shoulder rotator cuff tear, specifically, a partial tear of the distal supraspinatus tendon, and mild joint effusion; C3-C4 subligamentous central disc herniation with impression on thecal sac; C4-C5 2 mm broad-based central disc herniation with impression on thecal sac; C5-C6 2 mm broad-based central disc herniation with impression on thecal sac; C6-C7 a subligamentous central disc herniation and annular disc bulge with impression on the thecal sac; L3-4 disc herniation with compression of the anterior thecal sac and bilateral neural foramina and bilateral exiting nerve root; L4-5 disc bulge with impingement on the neural foramina; and left lateral L5-S1 disc herniation with compression of the anterior thecal sac and impingement of descending intraspinal nerve roots.

Plaintiff's medical experts concluded that the injuries to plaintiff's cervical

spine, lumbar spine, and left shoulder were permanent.  This is evidenced

through the narrative report of plaintiff's medical expert Richard Pearl, M.D.,

which stated as a result of the accident, plaintiff has "suffered a permanent injury

11

to the neck, lower back[,] and left shoulder within a reasonable degree of medical probability." Further, Dr. Pearl found the injuries to be "permanent in character" and "require[] further treatment to include injection and/or surgery." Plaintiff's other medical experts, Dr. Albano and Dr. Connor-Charles, both found plaintiff suffered "permanent residuals of disability as well as the use of her body . . ."

We further note plaintiff underwent two arthroscopic left shoulder surgeries. Concerning the first surgery, Dr. Pearl's July 30, 2021 post surgery report indicates that plaintiff underwent a left shoulder arthroscopic surgery involving: (1) diagnostic arthroscopy (use of camera); (2) anterosuperior complete synovectomy of the glenohumeral joint (surgical removal of the synovium membrane lining the shoulder joint); (3) extensive debridement of the labrum, bursa, and rotator cuff (surgical removal of damaged portions of the labrum, bursa, and rotator cuff); (4) bursectomy (surgical removal of the bursa, a small fluid-filled sac within the shoulder joint); (5) subacromial decompression and acromioplasty (shaving away part of the shoulder bone called the acromion) with coracoacromial ligament release (cutting the coracoid ligament in the shoulder).

The post-operative report after the second surgery indicated: (1) synovectomy (surgical removal of the synovium membrane lining the shoulder joint); (2) loose body removal; (3) distal claviculectomy (also known as a "Mumford procedure" where the outer portion of the collarbone is surgically removed); (4) partial acromioplasty (shaving away part of the shoulder bone called the acromion); (5) manipulation under anesthesia (physically moving arm and shoulder around with force through a range of motion causing the capsule and scar tissue to stretch and tear); and (6) platelet rich plasma injections.

The post operative diagnosis after the second surgery revealed: (1) adhesive capsulitis (also known as "frozen shoulder," a significant loss of passive range of motion); (2) impingement; (3) partial rotator cuff tear; (4) labral tear; and (5) glenoid chondral defect (damage articular cartilage).

At her deposition, plaintiff testified she was unable to lift her left arm causing her to lose her job at a car wash where she was employed. She also testified because of her neck pain she was unable to perform chores at home. The record further demonstrates that plaintiff was set to undergo an anterior cervical discectomy and spinal fusion surgery due to the disabilities caused by the herniations. However, because her blood sugar was too high, the surgery had to be cancelled.

13

After considering the foregoing evidence in a light most favorable to plaintiff, we conclude plaintiff made a sufficient prima facie showing that her injuries satisfy the second prong of Gilhooley based on her medical experts' opinions that she has a permanent loss of the functions of her left shoulder, lumbar spine, and cervical spine that are substantial. We conclude plaintiff satisfied this prong based on the evidence she provided in her opposition including: (1) medical proofs showing anatomical changes to her shoulder from her surgeries which removed part of her shoulder membrane, shoulder bone, and collarbone; (2) her experts' opinions that plaintiff will experience permanent limitations in her range of movement and function of her left shoulder, neck, and back; and (3) plaintiff's certification and deposition testimony stating (a) she lost her job at the carwash due the permanent loss of function of her left arm caused by her left shoulder injury; and (b) she was unable to perform maintenance of her home because of the limitations in her neck and back caused by the symptomatic cervical and lumbar herniations well after the date of accident. We further conclude there is a logical nexus between the objective MRI findings and the permanent functional disabilities to her left shoulder, neck, and back as found by her medical experts.

14

Because we conclude genuine issues of material fact exist in the record demonstrating plaintiff's injuries to her left shoulder, neck and back are permanent losses of bodily functions that are substantial, we conclude a jury determination is required, and summary judgment was inappropriate.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15

A-2663-23